**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **17-05751-jw**

### ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM

The relief set forth on the following pages, for a total of 31 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**08/17/2018**



*John E Waites* (signature)

US Bankruptcy Judge
District of South Carolina

Entered: 08/17/2018

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | Case No. 17-05751-JW |
| Randy Lee Devey, | Chapter 13 |
| Debtor. | |

## ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM

This matter comes before the Court for a hearing on the debtor Randy Lee Devey's ("Debtor") objection to the proof of claim ("Claim") filed by Carrie Jones Peterson and Ryan William Peterson (collectively the "Petersons"). The Petersons, through counsel, filed a timely response to the objection ("Response"). A hearing on the objection and Response was held before the undersigned, and attended by counsel for the parties and the Chapter 13 Trustee ("Trustee").

After considering the arguments of counsel and the statements of the Trustee, together with other matters properly before the Court, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, made applicable herein by Federal Rule of Bankruptcy Procedure 7052:[1]

## FINDINGS OF FACT[2]

1.  Debtor commenced the above-captioned Chapter 13 case on November 14, 2017.

2.  Prepetition, Debtor was named as a defendant in a state court lawsuit brought by the Petersons wherein they asserted various state law claims against Debtor, including breach of contract and fraud ("Litigation").[3]  Debtor filed for bankruptcy before the deadline for filing a

---

[1] The Court indicated a ruling at the hearing. This Order supplements that ruling.

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[3] A copy of the Petersons' state court complaint was not attached to the Claim, nor is it otherwise part of the record in this case. The Court's knowledge of the Litigation and of the allegations contained in the state court complaint is

responsive pleading in the Litigation.  It is undisputed that as of the petition date, the Petersons'

claims against Debtor were contingent and unliquidated.[4]

3.        In his original schedules filed on November 14, 2017, Debtor listed the Petersons

as the holders of an unsecured claim in an "Unknown" amount, arising from "unsecured credit,"

as a result of Petersons suing him prepetition for "breach of contract."

4.        Debtor filed his proposed Chapter 13 plan on November 14, 2017 ("Plan").  The

Plan provided that if there were funds available after payment of all other allowed claims, general

unsecured creditors with allowed claims would be paid *pro rata*, but the Plan did not contemplate

payment of 100% of general unsecured claims.

5.        The Petersons were served with the Plan, and filed an objection to confirmation of

the Plan on December 13, 2017 ("Peterson Plan Objection").

6.        Debtor amended his schedules on February 13, 2018 to disclose as a previously

omitted asset an account receivable in the amount of $7,332.37 owed to him by the Petersons, and

to claim an exemption therein.

7.        The Court held the continued confirmation hearing on March 12, 2018.  At this

hearing, the Court heard the testimony of the Petersons and Debtor, considered the evidence

presented, and the arguments of counsel.

8.        On March 13, 2018, the Petersons, through counsel, filed the Claim.  In paragraph

8 of the Claim, the Petersons indicated that the basis of the Claim was a "lawsuit for breach of

contract and fraud."[5]  The Petersons, however, did not attach a copy of the contract to the Claim,

---

limited to what is referenced in the Petersons' pleadings and arguments presented to the Court.  *See, e.g.,* Petersons'
Objection to Confirmation filed December 13, 2017, at ¶ 3.

[4] *See, e.g.,* Petersons' Statement of Dispute filed June 5, 2018, at ¶ 2(d).

[5] In paragraph # 7 of the Claim, the Petersons did not indicate that the Claim included prepetition charges, interest or
fees although at the hearing their counsel indicated the Claim did include $16,870.32 in prepetition attorney's fees
and costs. In section 3 of the Claim, the Petersons indicate that the Claim amount gave Debtor credit for any payments

nor is there an explanation for the failure to attach the contract.[6] Rather, the Petersons only attached

to the Claim the following three (3) items:

a.      "Carrie's Paperwork," is a chart containing entries totaling $140,137.30, covering a period commencing October 31, 2015 and ending on May 7, 2017.  The document is not signed, notarized, or otherwise attested or verified. There is no reference in the document to the terms of any contract, nor is there an identification of the property to which the entries apply.  The document does not appear to be a summary of the terms of the written contract. There are no supporting invoices or other documentation attached. The total appears to include $64,900 in payments to Debtor but lists other payments to third-party merchants and vendors, including references to credit card statements. There are no credits for value received in goods and services or anything that connects those goods and services to the property which is the subject of any contract. The following information is shown but does not appear to be included, credited, or accounted for in the total: "10/28/16 Randy's Sales Agreement – 2 pages $78,736."[7]

b.      A letter on Patterson Construction Letterhead addressed to the Petersons, "Ref: Completion of Remodel" ("Patterson Letter").   The Patterson Letter is undated and signed by "David Summerall," but the letter does not identify Mr. Summerall or his capacity with Patterson Construction. The Patterson Letter does not reference Debtor, any contract between Debtor and the Petersons, or identify the property which is the subject of the quote. The Patterson Letter appears to be a quote for work to be performed on an unidentified property for a "Base bid: of $38,175.00," with an estimated project duration of thirty days. There is no indication that the work was performed.

c.      A document entitled "Affidavit of Attorney's Fees" bearing the /s/ signature of the Petersons' then counsel, Naki Richardson-Bax. The document is not sworn, notarized, or offered under penalty of perjury, nor does it qualify as an unsworn declaration under 28 U.S.C. § 1746. The document appears to be a form affidavit used by counsel in domestic relations cases, as it cites to two state court divorce cases, and includes language regarding "the fact that there is no contingency of compensation in a domestic relations case."  *See* Affidavit at ¶ 5.  The document states

---

received toward the debt; however, the Claim does not appear to recognize any value for goods and services provided by Debtor, but appears to seek the total amount of the contract plus additional amounts.

[6] At the hearing, the Petersons' counsel admitted that the Claim for a "lawsuit for breach of contract and fraud" is based upon a written contract between the parties. The Court infers therefrom that all causes of action alleged in the complaint are based or dependent on the written contract.

[7] The date indicated in this entry appears important but may be incorrect. It causes further questions regarding the reliability and relevance of the entries.

that "in connection with this motion,"[8]    Ms. Richardson-Bax and "associated attorneys" spent "in excess of 53.9 hours," at the rate of $250 per hour, and support staff spent 19.1 hours at the rate of $150 per hour. The document seeks an award of $16,870.32, but does not specify the details of the work or time of performance, including whether the amount was incurred in connection with this bankruptcy case or the Litigation. The document does not disclose what portion of the $16,870.32 total is attributable to professional fees, and what portion is attributable to costs. The document also fails to identify any statute or contract provision entitling the Petersons to recover attorney's fees and does not indicate the existence or nature of any attorney's fee agreement between the Petersons and their counsel (i.e. hourly rate, contingency fee).

(collectively the "Attachments"). The Attachments appear to constitute a summary of alleged damages, but do not indicate the terms of any contract between the parties, including the scope of the work, duties and responsibilities of each party (including the duty to supply materials, allowances and overages, contact changes, etc.), consideration, or timing of performance. The Attachments do not indicate any intentional misrepresentations by Debtor or right to rely by the Petersons. The Attachments simply do not provide parties with sufficient information to ascertain the basis and accuracy of the Claim or the existence of the debt represented by the Claim.[9]

9.    Although the Petersons have admitted in both the Statement of Dispute filed prior to the hearing and in statements at the hearing, through counsel, that the Claim is contingent and unliquidated, this is not indicated on the Claim, which actually purports to state that the Petersons are owed the sum certain amount of $195,182.70. Furthermore, there is no indication in the Claim that it is an estimated claim, although the Petersons, through counsel, stated at the hearing that the amount stated in the Claim represented an estimation of damages.

---

[8] The Court notes that "this motion" is not identified in the "Affidavit of Attorney's Fees." Although the Petersons filed a Motion to Dismiss on March 30, 2018 in a related adversary proceeding *Peterson v. Devey*, Adv. Pro. No. 18-80009 ("Adversary"), they have not filed a motion in the main bankruptcy case.

[9] The Claim and its Attachments do not provide sufficient information indicating the terms or nature of the contract between the parties, including the duties and obligations of each party, the requirements and timing of performance, the consideration or terms of payment, or other sufficient information or elements to allege or establish a breach of contract or fraud claim.

4

10.     March 14, 2018 was the deadline for all creditors, except governmental units, to file a proof of claim.  Five (5) unsecured creditors filed claims totaling $204,143.86.  The largest claimant amongst them was the Petersons.

11.     On April 11, 2018, this Court entered an Order overruling the Peterson Plan Objection and confirming Debtor's Plan ("April 11 Order").  The April 11 Order made the following holdings, which are relevant to this Order:

    a.  that § 707(b) is not applicable to Chapter 13 cases.  April 11 Order at 5, n.10.

    b.  that there was no evidence that Debtor's amendments to his schedules were undertaken for a nefarious purpose.  April 11 Order at 10-12.

    c.  that the Plan was filed in good faith, and there was no convincing evidence that Debtor attempted to manipulate or abuse the Bankruptcy Code.  April 11 Order at 13-14, and 15.

    d.  that the Petersons failed to offer any convincing evidence to indicate to the Court that Debtor was dishonest in representing the facts of his case.  April 11 Order at 13.

    e.  that the Petersons failed to offer any testimony or evidence regarding their specific issues with Debtor's work, or regarding the nature and scope of the job for which Debtor had been hired.*  April 11 Order at 14.

    f.  that Debtor's decision to file bankruptcy and not respond to the Litigation, in and of itself, is not evidence of a lack of good faith.  April 11 Order at 14.

    g.  that, although the Petersons had filed the Claim, "a copy of [the Petersons'] contract with the Debtor is not attached to the Claim or otherwise part of the record . . . ."*[10]  April 11 Order at 8, n.14.

12.     The April 11 Order was not appealed, and is a final Order of this Court.

13.     On April 26, 2018, Debtor filed his objection to the Petersons' Claim ("Objection"). Therein, Debtor challenged the Claim in the amount of $195,182.70 as unenforceable by asserting that the Claim's balance was not proper or supported, the Claim did not comply with Fed. R. Bankr.

---

[10] Certainly, these findings denoted with an asterisk should have demonstrated to the Petersons and their counsel the importance of presenting proof to support the allegations of breach of contract and fraud.

P. 3001, the Petersons, in fact, owed him $7,332.27, and the attorney's fees sought in the Claim have "no legal basis for recovery." In his Objection, Debtor asked that the Claim be disallowed in its entirety.

14.    On May 29, 2018, the Petersons filed the Response to the Objection to Claim. Therein, the Petersons argued that:

    a.  their debt "is not a consumer debt;"

    b.  a proof of claim is *prima facie* evidence of validity and amount of the Claim;

    c.  the Objection did not identify any specific grounds as to why the Claim should not be allowed;

    d.  the debt arose out of Debtor's business dealings, and was based on a pending civil suit which requested damages in excess of $150,000;

    e.  Debtor filed for bankruptcy within two (2) weeks of being served in the Litigation and did not answer the state court complaint.  It is because of Debtor's "purposeful action[]" that the Petersons' damages are unliquidated;

    f.  Debtor's schedules initially listed the Petersons as creditors with an undisputed claim, but then Debtor amended his schedules and changed his position.

15.    Pursuant to Chambers Guidelines, the parties' Joint Statement of Dispute on the Objection to Claim was due at 10:00 a.m. on June 4, 2018,[11] but none was filed.[12]

---

[11] Pursuant to the undersigned's Chambers Guidelines, which are provided on the Court's website and are binding on the parties pursuant to Amended Operating Order 17-02, parties to a contested matter are required to submit a Joint Statement of Dispute (which is in the nature of a joint pretrial stipulation) two business days before the scheduled hearing.  Therein, the parties have the duty to define the issues to be decided by the Court, and to state with specificity their position on the identified issues.  The parties must also identify their witnesses and exhibits for the hearing, outline any evidentiary disputes, and disclose the legal authorities upon which they rely.  The parties to the Joint Statement are bound to the positions and disclosures provided therein, and are prohibited from reserving the right to materially alter or supplement the Joint Statement after its submission.  If, for some reason, the parties are unable to file a Joint Statement of Dispute, the Chambers Guidelines require each party to file an individual Statement of Dispute subject to the same requirements and containing the same information that would be included in a Joint Statement of Dispute, and to disclose therein the reason that a Joint Statement could not be filed. If separate Statements are filed, each party is bound to the positions taken therein for purposes of the hearing, and therefore deemed to have abandoned any different arguments or positions.

[12] On the morning of June 5, 2018, Chambers communicated by email with counsel for the parties to remind them of the obligation to file a Joint Statement, and instructed them to file one by noon that day.

16.     At or around 2:37 p.m. on June 5, 2018, Ms. Richardson-Bax's partner Arie Bax

informed the Court that he would be taking over representation of the Petersons.  Mr. Bax advised

Chambers that he was seeking a continuance of the June 6 hearing, and that counsel for Debtor

and the Trustee consented to his request.

17.     Due to the lateness of the request, the Court denied the Motion to Continue in

advance of the hearing, and required the parties to appear at the June 6 hearing.  The Court

indicated, however, that it would consider a continuance request at the June 6 hearing.

18.     At 2:49 p.m., Debtor filed and served his Statement of Dispute and Stipulation

("Debtor's Statement of Dispute").  Therein, Debtor indicated:

   a.  The issue to be decided by the Court was whether the Petersons' Claim should
       be disallowed.

   b.  Debtor argued that the Claim should be disallowed because:

       i.   it does not comply with Rule 3001;

       ii.  although paragraph 8 of the Claim alleges that the basis for the
            Claim is "breach of contract," no contract is attached to the
            Claim;

       iii. the "base bid" and "Carrie's Paperwork" are hearsay, and the
            figures contained therein do not match the dollar amount on
            the face of the Claim;

       iv.  nothing in the Claim connects the "base bid" to Debtor, or
            evidences a debt owed by Debtor to the Petersons;

       v.   "Carrie's Paperwork" is insufficient to establish a debt owed
            by Debtor to the Petersons; and

       vi.  there is no legal basis for the Petersons to recover their legal
            fees from Debtor.

Debtor's Statement of Dispute further indicated Debtor's consent to the Court's entry of final

orders and judgments.

22.     At 3:20 p.m. on June 5, the Petersons filed and served their Statement of Dispute

and Stipulation ("Petersons' Statement of Dispute").  Therein the Petersons indicated:

   a.  The issues to be decided by the Court were:

    i.    Whether the Petersons' Claim should be "dismissed;" and

    ii.    "Whether this court is the proper jurisdiction to decide the amount of the claim."

  b.  The Petersons' arguments were narrowed and asserted that:[13]

    i.    "[T]hey are not a consumer debt as established in Debtor's petition for bankruptcy as the debt to them was not a 'debt incurred by an individual primarily for personal, family, or household purpose.' 11 U.S.C. § 707(b)."

    ii.    "This debt arose out of Debtor's business dealings. Debtor held himself out as a business owner who was licensed as a general contractor capable of doing major renovation work which he was not in fact licensed to do."

    iii.    "The debt owed to the Petersons is based on a pending civil lawsuit with several causes of action including Breach of Contract, Constructive Fraud, Fraud and Misrepresentation, Breach of Contract Accompanied by Fraudulent Act."

    iv.    "The automatic stay in this case should be lifted so that the parties can litigate in the appropriate court to determine the exact amount of the debt owed to the Petersons."

  c.  The Petersons stated an intention to offer six (6) exhibits.[14]

The Petersons' Statement of Dispute further indicated that they did not intend to present any

witnesses, and indicated the Petersons' consent to the Court's entry of final orders and judgments.

    23.    A hearing on the Objection was held on June 6, 2018. At the start of the hearing,

the Court indicated it would first consider the Petersons' Motion for a Continuance. In response,

---

[13] Many of the arguments raised by the Petersons' in their Statement of Dispute had been previously ruled on and disallowed by this Court. *See supra* at ¶ 11. Pursuant to Amended Operating Order 17-02 and Chambers Guidelines, a Statement of Dispute filed by a party for purposes of a contested hearing is binding and may limit the parties' arguments and evidence at the hearing.

[14] The Petersons' Statement of Dispute identified the following documents as ones that would be offered as exhibits at the hearing on the Objection; however, **no exhibits were in fact offered or admitted at the hearing:**

    *    Summons and Complaint;

    *    Checks cashed by Randy Devey;

    *    Contract estimate submitted by Randy Devey;

    *    Copy of the estimate for repair of the Petersons' Home;

    *    Copy of the Petersons' invoice for legal fees; and

    *    Copy of the Petersons' retainer agreement.

Mr. Bax indicated that he was withdrawing the motion, and was prepared to proceed with the hearing. Thereafter, each attorney presented their client's respective positions and arguments, but neither party presented any witnesses, introduced any evidence, or asked the Court to take judicial notice of any matter.

24.      At the hearing, the Trustee advised the Court that based on the record, the allowance or disallowance of the Claim would have a material effect on distribution and on both Debtor and the general unsecured creditors who filed timely claims. Specifically, if the Claim is not allowed, the Trustee estimated that general unsecured creditors would receive 100%, and that Debtor would be in a position to complete payments under the confirmed Plan and receive a discharge on a significantly earlier date.

## CONCLUSIONS OF LAW

**ISSUES:**

(1)  Whether this Court has jurisdiction and final authority to determine the allowance of the Petersons' Claim?

(2)  Whether the Petersons are entitled to a jury trial or relief from stay, demands raised at the hearing?

(3)  Whether the Petersons' Claim should be allowed or disallowed in this case?

**A.      Court's Jurisdiction, Final Authority, Request for Jury Trial and Relief from Stay**

In their Statement of Dispute and at the hearing, the Petersons questioned for the first time this Court's jurisdiction to decide the amount of the Claim. Although in other papers filed with the Court, the Petersons indicated that "they no longer contest having the debts due to them included in debtor's bankruptcy,"[15] the Petersons argued that they wished to have stay relief so

---

[15] *See* The Petersons' Motion to Dismiss, filed in the Adversary Proceeding No. 18-80009-jw on March 30, 2018.

they could return to state court and adjudicate their claims against Debtor before a state court judge

and jury.  The Petersons argued that a jury trial conducted in state court was the proper avenue for

a determination of their Claim.

    **1.  <u>Jurisdiction to Adjudicate Claim</u>.**

It is well established that the allowance or disallowance of a claim in bankruptcy is a matter

of federal law that is left to the bankruptcy court's exclusive exercise of its equitable powers.

*Katchen v. Landy*, 382 U.S. 323, 329–30 (1966) (The bankruptcy court is "expressly granted [the]

power to 'allow,' 'disallow' and 'reconsider' claims, which is of 'basic importance in the

administration of a bankruptcy estate.'" (internal citation omitted)); *Canal Corp. v. Finnman*, 960

F.2d 396, 404 (4th Cir. 1992) (The existence of a claim is controlled by state law, but the

"allowance or disallowance of a claim in bankruptcy is a matter of federal law left to the

bankruptcy court's exercise of its equitable powers.").  Confirmation of a chapter 13 plan and the

allowance or disallowance of claims against the bankruptcy estate are, as a matter of law, core

matters that arise under the Bankruptcy Code.  *See* 28 U.S.C. § 157(b)(2)(B), (L), and (O) ("Core

proceedings include, but are not limited to . . . allowance or disallowance of claims against the

estate . . . confirmations of plans . . . [and] other proceedings affecting . . . the adjustment of the

debtor-creditor . . . relationship."); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)

("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they

might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.").

Indeed, one of the primary purposes of a bankruptcy proceeding is "to centralize disputes over

debtor's assets and obligations in one forum, thus protecting both debtors and creditors from

piecemeal litigation and conflicting judgments." *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th

Cir. 2015).  As explained by the United States Supreme Court:

> Every person submitting himself to the jurisdiction of the bankrupt court [sic] in the progress of the cause, for the purpose of having his rights in the estate determined, makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding.  A creditor who offers proof of his claim, and demands its allowance, subjects himself to the dominion of the court, and must abide the consequences.

*Wiswall v. Campbell*, 93 U.S. 347, 351 (1876).

## 2.  **Final Authority.**

In order to efficiently administer the litigation of contested matters before it, the Court's Chambers Guidelines and Amended Operating Order 17-02 require any party who objects to this Court's final authority in a matter to file a motion setting forth the basis of its objection no later than the time of filing a Statement of Dispute. This allows the issue to be set for a hearing on the merits.[16]  The Petersons did not file such a motion.

Furthermore, in the Statement of Dispute filed by the Petersons on June 5, 2018, the Petersons underline_expressly consented to this Court entering a final order and judgment on the Objection to the Claim.  In addition, the Petersons have been active participants in this chapter 13 case, have filed numerous documents in this case (including the Peterson Plan Objection, the Claim, and an adversary complaint) seeking relief from the Court, and have participated in no fewer than four (4) contested hearings.  By all of these actions, the Petersons have consented to the jurisdiction of this Court and waived any challenge to final authority.

---

[16] *See* Chambers Guidelines at Exhibit A:

> Final Authority. Unless otherwise indicated by a separately filed motion, filed simultaneously herewith, which requests that the Court determine whether this proceeding is subject to the entry of final orders or judgments by this Court, **the parties submitting this Joint Statement of Dispute consent to this Court entering final orders and judgments in this proceeding.**

(Emphasis in original).

### 3.  <u>Jury Trial and Request for Stay Relief.</u>

The Court also finds that by filing a proof of claim, the Petersons waived their right to a jury trial.  Once a claimant has submitted to this Court's equitable jurisdiction by triggering the claims allowance process, there is no Seventh Amendment right to a jury trial.  *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (Parties who file claims against the bankruptcy estate bring themselves within the equitable jurisdiction of the Bankruptcy Court and waive the right to a jury trial.); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) (same); *Katchen v. Landy*, 382 U.S. at 336-337 ("[A]lthough petitioner might be entitled to a jury trial . . . if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity . . . and as the proceedings of bankruptcy courts are inherently proceedings in equity, there is no Seventh Amendment right to a jury trial for determination of objections to claims . . . ." (internal citations omitted)).  The Court's authority to determine claims includes the "full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.  This is essential to the performance of the duties imposed upon [the Court]." *Lesser v. Gray*, 236 U.S. 70, 74 (1915); *see* 11 U.S.C. § 502(b)(1) (If an objection to a claim is made, "the court . . . shall determine the amount of such claim. . . .").

By filing a proof of claim, actively participating in the bankruptcy process, and consenting to the jurisdiction and authority of this Court, the Petersons have waived both the right to a jury trial, and any challenge to this Court's authority to adjudicate the matters before it and enter judgments and final orders.  This Court has jurisdiction to rule on the Objection, and to determine the validity and amount of the Claim.

The Petersons also requested for the first time in their Statement of Dispute that the automatic stay under 11 U.S.C. § 362 be lifted to permit the state court to litigate the dispute between the parties and determine Debtor's liability.[17] While § 362 permits a court to lift the automatic stay to allow parties to litigate matters in state court, a party's request for stay relief under § 362(d) should be made via a motion filed in accordance with Fed. R. Bankr. P. 4001(a) and 9014, this Court's Local Rules, and upon adequate notice and opportunity to be heard to the debtor and the chapter 13 trustee.  In the present case, the Petersons have not filed a motion for relief from stay.  The Court also finds that considering § 362 relief to allow the adjudication of the Claim in state court at such a late stage would cause significant delay and be prejudicial to case administration and to the interests of Debtor and other creditors. Finally, the Petersons made no showing of "cause" or other grounds for the stay to be lifted under § 362(d).

**B.     Consideration of the Claim.**

Pursuant to § 502(a) of the Bankruptcy Code, a proof of claim is deemed allowed unless an objection is filed. Section 502(b) provides that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim as of the date of the petition, and shall allow such claim in that amount, unless the claim is disallowed under exceptions listed in the Bankruptcy Code, including that the "claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."

Rule 3001 of the Federal Rules of Bankruptcy Procedure governs the form and content of a proof of claim filed by a creditor. If the claim is filed in accordance with Fed. R. Bankr. P. 3001, the claim shall constitute *prima facie* evidence of the validity and amount of the claim. *See* Fed R. Bank. P. 3001(f). Fed R. Bankr. P. 3001(c) clearly requires that if the claim is based on a writing,

---

[17] Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

"a copy of the writing **shall** be filed with the claim" unless the writing has been lost or destroyed, in which case, "a statement of the circumstances of its loss or destruction shall be filed with the claim." Fed. R. Bankr. P. 3001(c) (emphasis added).

### 1.      The Petersons' Proof of Claim

The Peterson's Claim appears to be based on causes of action alleged in the state court complaint for breach of contract and fraud associated with the entry and performance of a construction contract between Debtor and the Petersons. At the hearing on the Objection to Claim, the Petersons, through counsel, admitted that the Claim is based upon a signed written contract between the parties.  However, neither a copy of the contract in question nor a statement explaining its absence was attached to the Claim as required under Fed. R. Bankr. P. 3001(c). The Rule is clear and unequivocal in this requirement, and therefore, the Petersons' failure to comply with Fed. R. Bankr. P. 3001 deprives the claim of *prima facie* validity under Fed. R. Bankr. P. 3001(f). *See In re Tran*, 369 B.R. 312, 317 (S.D. Tex. 2007) (holding that a creditor's failure to comply with Fed. R. Bankr. P. 3001(c) results in the claim "not enjoy[ing] prima facie validity"); *In re Hilton*, C/A No. 12-61102, 2013 WL 6229100, at *5 (Bankr. W.D. Va. Dec. 2, 2013) ("[C]ourts have held that failing to supply this documentation . . . deprives the claim of prima facie validity."); *In re McCarthy*, C/A No. 04-10493-SSM, 2004 WL 5683383, at *9 (Bankr. E.D. Va. July 14, 2004) (finding that a claim failed to satisfy the writing requirements of Fed. R. Bankr. P. 3001(c), and therefore, did not have *prima facie* evidence of validity and amount).

The Court notes, however, that the Petersons included other Attachments with the Claim. Although not argued in detail at the hearing, the Petersons assert that they complied with Fed. R. Bankr. P. 3001 and appear to rely on the holding in *In re Falwell*, 434 B.R. 779 (Bankr. W.D. Va. 2009). In the 2009 *Falwell* decision, the bankruptcy court for the Western District of Virginia

found that a credit card creditor, who failed to attach the credit card agreement but did attach a 10-month detailed transaction history, met the requirements of Fed. R. Bankr. P. 3001. *Id.* at 786. However, for the reasons stated below, the Court finds the present matter is readily distinguishable from the facts and holding in *Falwell*.

First, in *Falwell*, the court emphasized that the debtors did not dispute the existence of the creditor's claim, nor did they dispute the amount of the claim. *Id.* at 785–86. In that case, the debtors had scheduled the debt as undisputed and in the same or substantially the same amount as that represented in the timely filed proof of claim. *Id.* The recognition of the debt in the same amount and character in the debtors' schedules has been recognized as a judicial admission. *See In re Napier*, C/A No. 17-71557, 2018 WL 2717042 (Bankr. W.D. Va. May 23, 2018) (considering the debtor's schedules, which were nearly identical to a consumer credit card creditor's proof of claim in overruling an objection to claim for failing to attach proper documentation). *In re Prevatte*, C/A No. 06-03131-DD, slip op. (Bankr. D.S.C. Jan. 29, 2007) (allowing a claim that did not comply with Fed. R. Bankr. P. 3001 when the debtor had scheduled the claim as undisputed, non-contingent in an amount within pennies of the filed proof of claim); *In re O'Brien*, 440 B.R. 654, 666 (Bankr. E.D. Pa. 2010) ("[D]ebtor's schedules . . . may contain admissions that shore up shortfalls in the proof of claim."). However, in this case, while properly listing the debt due to the pending lawsuit, Debtor listed the debt as "unknown," recognizing its contingent and unliquidated nature, and thus preserved his ability to challenge any claim. In his Objection, Debtor did just that, he challenged the amount and validity of the Claim filed by the Petersons.

Second, the *Falwell* decision addressed a claim based upon an open-ended or revolving consumer credit agreement governed by an earlier version of Fed. R. Bankr. P. 3001. The Court in *Falwell* highlighted the different nature of credit card transactions, and in light of the debtor's

recognition of the debt at issue, accepted as sufficient supporting documentation a detailed summary of credit transactions (debts and credits) over a 10-month period. *Falwell*, 434 B.R. at 785–86.

However, the version of Fed. R. Bankr. P. 3001 applicable in this case is different from that existing at the time of the *Falwell* decision. In December 2012, Fed. R. Bankr. P. 3001 was amended to add subsection (c)(3), which, for claims based on an open-ended and revolving consumer credit agreement, specifically allows an alternative to (c)(1)'s requirement to attach the writing that is the basis of the claim. *See* Fed. R. Bankr. P. 3001(c)(1) ("**Except for [an open-ended or revolving consumer credit agreement] claim governed by [subsection (c)(3)]**, when a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim." (emphasis added)).

In this case, the Petersons' Claim appears to be based on a single signed written contract and is not in the nature of an open-ended or revolving consumer credit agreement, and therefore, the reasoning of *Falwell* does not apply, nor does the exception to the requirement to attach the contract provided by Fed. R. Bankr. P. 3001(c)(3). In this case, the Petersons failed to comply with the express requirements of Fed. R. Bankr. P. 3001(c),  the debt is contingent and unliquidated,[18] and the Claim does not qualify as an estimated claim under § 502(c).[19]

---

[18] In their Statement of Dispute and at the hearing, the Petersons indicated the Claim was contingent and not liquidated and an estimate. It seems clearly within the parties' expectations that such a contingent and unliquidated claim must be proven.

[19] Section 502(c) provides that a contingent or unliquidated claim may be estimated for purposes of allowance; however, the Claim presented in this matter does not qualify as an estimated claim. Under § 502, a claim may be estimated if: (1) the claim is contingent or unliquidated, and "the fixing or liquidation [of the claim], as the case may be, would unduly delay the administration of the case;" or (2) the claim is for a "right to payment arising from a right to an equitable remedy for breach of performance."

In the present matter, the Claim does not assert that it is an estimate or indicate a methodology used to estimate the Claim. There has been no showing that the fixing of the Claim would unduly delay the administration of the estate. Finally, there was no evidence or assertion that, prior to the hearing in this matter, the Petersons ever informed Debtor, the Trustee or the Court that their Claim was estimated. Therefore, it appears the Claim did not comply with § 502(c). *See Hilton*, C/A No. 12-61102, 2013 WL 6229100, at *7 (finding that a claim was not a valid estimated proof of claim

Furthermore, the Attachments to the Claim do not provide the Claim with *prima facie* evidence of validity or amount. They are not clear or sufficient to establish the contract, the nature and scope of the relationship between Debtor and the Petersons, or to establish the validity and amount of the debt asserted. They also do not indicate any false representation, right to rely, or other information essential to a fraud claim.   They do not provide Debtor, the Trustee, other creditors or the Court with sufficient information to ascertain the basis and accuracy of the Claim. They do not even identify the property to which they apply. Notably, the Petersons did not attach a copy of the complaint they filed in state court or affidavits of the parties that would establish the existence of a debtor-creditor relationship.[20] While the Attachments may be intended to summarize damages, they do not support a basis for liability or satisfy the requirements under Fed. R. Bankr.

---

when the creditor failed to specify it was estimated, did not disclose the estimation methodology, and there was not sufficient evidence on the record to estimate the amount of the claim).

Further, there was no showing that the causes of action that serve as the basis of the Petersons' claim are seeking equitable remedies. *See O'Shea v. Lesser*, 308 S.C. 10, 416 S.E.2d 629 (1992) (holding that, under South Carolina law, an action alleging fraud is one at law); *Silver v. Aabstract Pools & Spas, Inc.*, 376 S.C. 585, 590, 658 S.E.2d 539, 541–42 (Ct. App. 2008) (holding that, under South Carolina law, a breach of contract action seeking monetary damages is one at law).

[20] There are older reported cases that appear to accept summaries of documents in lieu of copies of the actual documents to satisfy the requirements of Fed. R. Bankr. P. 3001(c), especially when the underlying documentation were voluminous. *See In re Pursley*, 451 B.R. 213, 220 (Bankr. M.D. Ga. 2011). However, as part of the December 2011 amendments to Fed. R. Bankr. P. 3001, the Official Proof of Claim Form was revised to "make clear that a summary is not a substitute for the requirement to attach documents evidencing the debt." *In re Richter*, 478 B.R. 30, 41 (Bankr. D. Colo 2012); *see also In re Ulmstead*, 490 B.R. 186, 193 n.7 (Bankr. E.D. Pa. 2013) ("Since *O'Brien* and *Pursley* were decided, the scope of the document 'summary' option may have been circumscribed. Paragraph 7 of the Instructions to Official Form No. 10 now states that the claimant 'may attach a summary in addition to the documents themselves.'" (quoting Advisory Committee Note (2011 Amendment))). The instructions to Official Form 410, which are applicable in this matter, similarly provide that summaries may be added "[i]n addition to the documents," but not in lieu of the documents.

Nonetheless, even in these older cases where summaries were permitted in place of the writing that was the basis of the claim, courts held that Fed. R. Bankr. P. 3001(c) requires a summary of the **documents supporting the debt**, and not merely a summary of the debt. *See In re McCarthy*, C/A No. 04-10493-SSM, 2004 WL 5683383, at \*6 (Bankr. E.D. Va. July 14, 2004) (noting that a creditor's attachments were not sufficient under Fed. R. Bankr. P. 3001(c) because the attachments only summarized the debt and did not summarize the documents supporting the debt); *In re Povey*, C/A No. 07-80076, 2008 WL 1376271 (Bankr. E.D. Okla. Apr. 9, 2008) (holding that a claim lacked *prima facie* evidence of validity and amount when the attached summary did "not set forth any terms that would be contained in a writing as contemplated under Bankruptcy Rule 3001(c)").

P. 3001(c), and do not replace any contract as the writing that indisputably serves as the basis of the Claim.

Because it did not comply with Fed. R. Bankr. P. 3001, the Claim with the Attachments does not qualify as *prima facie* evidence as to the validity and amount of the debt.[21]

## 2.    <u>Debtor's Objection to the Claim</u>

Although it is generally true that parties involved in the claims adjudication process often face shifting burdens of proof (*see generally In re Hartford Sands*, 372 F.3d 637, 640 (4th Cir. 2004) (outlining the shifting evidentiary burdens in the claims objection process); *In re Worldwide Wholesale Lumber, Inc.*, C/A No. 06–1499–JW, slip op. at 7–8 (Bankr. D.S.C. Feb. 12, 2007) (same)), if the proof of claim, as filed, does not qualify *prima facie* evidence as to validity and amount, then the evidentiary burden of proof never shifts from the claimant to the objecting party. To challenge the allowance of the claim pursuant to § 502(b), the objecting party need only file an objection pursuant to the applicable rules.  *See In re Mazyck*, 521 B.R. 726, 732 (Bankr. D.S.C. 2014) ("If the presumption does not arise, the [debtors] need only object to the claim[s] pursuant to the applicable rules, which include § 502(b)." (internal citation and quotation marks omitted)); *Virginia Broadband, LLC v. Manuel* (*In re Virginia Broadband*), 538 B.R. 253, 260 (W.D. Va. 2015) ("Only in the case where the creditor fails to file the requisite documentation under the first step of the burden-shifting framework is it sufficient for the debtor to object without producing rebuttal evidence in support of its objection."); *In re Tran*, 369 B.R. at 318 ("[B]ecause [claimant's] claim had no presumption of validity, [debtor] had no evidentiary burden to overcome

---

[21] To be clear, the failure to attach the contract or explain the failure to do so does not defeat the Claim based solely on the grounds of insufficient documents; rather, it merely deprives the claim of *prima facie* evidence of validity and amount. The Petersons still had the opportunity to prove the Claim under state law at the hearing on the Objection—similar to their opportunity to prove the contingent and unliquidated Claim in state court under the complaint and according to the same burden of proof.

in objecting to [claimant's] claim."); *In re Hodges*, 2003 WL 262521, at *2 (Bankr. M.D.N.C. Feb.

4, 2003) ("The burden of proof with respect to claims filed [pursuant to § 501 and] § 502 rests

initially and ultimately with the claimant.").

In the present matter, Debtor's Objection challenged the amount and enforceability of the

Claim as filed, including the asserted attorney's fees and costs, and alleged Debtor is, in fact, owed

money by the Petersons.   These grounds are substantive legal challenges to the Claim that go

directly to the validity, amount, and enforceability of the Claim. *See generally In re Pursley*, 451

B.R. 213, 231–32 (Bankr. M.D. Ga. 2011) ("[I]t is a substantive objection if a party claims not to

owe money to another party; that goes directly to the validity of the claim.") (*citing In re King*,

C/A No. 08-13152-SSM, 2009 WL 960766, at * 5 (Bankr. E.D. Va. April 8, 2009)); *In re Schmale,*

08-3315-JW, slip op. at 2 (Bankr. D.S.C. April 28, 2009); *In re Cleveland*, 396 B.R. 83, 93 (Bankr.

N.D. Okla. 2008) ("In the face of a substantive objection by a party in interest, the Court is required

to determine the amount of each claim as of the petition date, and to allow the claim in that amount,

except to the extent the claim is unenforceable against the debtor or the debtor's property under

applicable law. Claimants therefore must first establish that they hold enforceable claims against

the respective Debtors.").

In addition, Debtor's challenge to the enforceability and amount of the Claim is not only

reflected in the Objection but referenced in Debtor's schedules, which list the Claim amount as

unknown. By stating that any claim held by the Petersons is unknown, Debtor placed the Petersons

on notice that he was not agreeing to any debt owed.

Because of the pending state court Litigation, it was proper for Debtor to acknowledge the

existence of the Claim in his schedules. *See In Matter of Motors Liquidation Co.*, 829 F.3d 135,

160 (2d Cir. 2016), *cert. denied*, —— U.S. ——, 137 S. Ct. 1813 758 (2017) (Contingent claims

are still claims under § 101(5), and claimants are entitled to adequate notice if the debtor knows of the claims.). However, such a scheduling was not Debtor's admission of liability to the Petersons, it does not establish the Petersons' right to payment, and it does not signify Debtor's promise to pay the Petersons. *See Harford Sands*, 372 F.3d at 642 (holding that acknowledge of the debt "does not prove how the debt arose"); *In re Vaughan*, 536 B.R. 670, 678 (Bankr. D.S.C. 2015).

Furthermore, by alleging that the Claim had not complied with the documentation requirements of Fed. R. Bankr. P. 3001, the Objection sufficiently alerted the Petersons that Debtor was challenging any presumption of *prima facie* evidence of validity and amount the Claim, and placed the Petersons on notice of their need to prove the terms of the contract and the basis for the Claim at the hearing on the Objection.

The Objection demonstrated a true dispute of the Claim and its amount, and as such, appeared based on good faith grounds. Therefore, the Court finds Debtor's Objection was sufficient to challenge the validity and amount of the Claim as filed and leave the burden of proof on the claimant, the Petersons.

3.   **The Petersons' Burden at the Hearing**

Despite the failure of the Claim to qualify as *prima facie* evidence of validity and amount, the Petersons were, nonetheless, entitled to present evidence to establish the validity and amount of their Claim at the hearing on the Objection. The ultimate burden of establishing the validity and amount of the Claim rests on the Petersons. *In Harford Sands*, 372 F.3d at 640 ("The creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.").

As held by the United States Supreme Court, a bankruptcy filing does not alter the burdens of proof and persuasion imposed by substantive state law, which determines whether a debtor has

20

an obligation to the creditor in the first instance.  *See Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 20 & 21 (2000) ("The 'basic federal rule' in bankruptcy is that state law governs the substance of claims . . . [and] the burden of proof is an essential element of the claim itself. . . ." (internal citations and quotation marks omitted)).  Although a claim filed in conformity with Fed. R. Bankr. P. 3001 enjoys certain evidentiary presumptions, the mere filing of a proof of claim does not convert an otherwise contingent and unliquidated debt into a noncontingent, liquidated obligation of the debtor.  As stated in *Raleigh*:

> [B]ankruptcy does not alter the burden imposed by the substantive law. . . . Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, [and] there is no reason why [a creditor's] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Raleigh*, 530 U.S. at 17 & 20 (internal citations and quotation marks omitted)*; see also United States v. Sanford* (*In re Sanford*), 979 F.2d 1511, 1513 (1992) (11th Cir. 1992) (A claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy.); *In re Cleveland*, 396 B.R. at 93 ("The same burdens of production and persuasion apply [in a claim objection] as would apply outside of bankruptcy."); *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1050 n.6 (5th Cir. 1992) ("State law is the appropriate law for determining the validity of an underlying claim."); *In re Seltzer*, 529 B.R. 385, 388 (Bankr. M.D. Ga. 2015) ("Once a party in interest raises an objection [to a claim] pursuant to § 502(b)(1), the burden of proof is determined by applicable nonbankruptcy law.").

To establish its entitlement to payment from the estate, the claimant must prove both the debtor's liability under applicable state law and prove the amount of its damages.  While the claims adjudication process in bankruptcy is intended to be a summary proceeding, a claim objection is a

contested matter governed by Fed. R. Bankr. P. 9014(d) and (e), with the Court considering the evidence presented and then determining the amount of the claim. *See In re Charleston Affordable Hous., Inc.*, C/A No. 09-01020, 2009 WL 9071877, at *2 (Bankr. D.S.C. June 10, 2009).

In the present matter, because the Claim is based on causes of action for a breach of contract and fraud, the Petersons were required at the hearing to prove both the validity and amount of Debtor's liability for breach of contract,[22] and fraud.[23]  Under South Carolina law, the breach of contract claim requires the introduction of evidence of: (1) a binding contract entered into with Debtor; (2) Debtor's breach or unjustifiable failure to perform the contract; and (3) the Petersons suffered damages as a direct and proximate result of Debtor's breach.  *See King v. Carolina First Bank*, 26 F. Supp. 3d 510 (D.S.C. 2014) (Setting forth the elements of a breach of contract claim in South Carolina.); *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705 (D.S.C. 2014) (same).  To establish fraud, the Petersons must show: (1) a representation by Debtor; (2) its falsity; (3) its materiality; (4) either Debtor's knowledge of its falsity or a reckless disregard of its truth or falsity; (5) Debtor's intent that the representation be acted upon by the Petersons; (6) the Petersons' ignorance of its falsity; (7) the Petersons' reliance on its truth; (8) the Petersons' right to rely thereon; and (9) the Petersons' consequent and proximate injury.  *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003); *see Enhance-It, L.L.C. v. American Access Tech., Inc.,* 413 F. Supp. 2d 626 (D.S.C. 2006) (In South Carolina, the mere breach of a contract does not constitute fraud.).  For each cause of action, the Petersons were also required to prove the amount of their damages.  *See Whisenant v. James Island Corp.*, 281 S.E.2d 794, 796 (S.C. 1981) ("Generally, in

---

[22] *See Jackson v. Midlands Human Resources Center*, 374 S.E.2d 505 (S.C. Ct. App. 1988) (Breach of contract must be proven by a preponderance of the evidence.).

[23] *See Robertson v. First Union Nat'l Bank*, 565 S.E.2d 309, 314 (S.C. Ct. App. 2002) (Fraud must be proven by clear, cogent, and convincing evidence.).

order for damages to be recoverable, the evidence should be such as to enable the court . . . to determine the amount thereof with reasonable certainty or accuracy.").

Therefore, at the hearing on the Objection, the Petersons had the burden of proof to establish these elements of each cause of action under South Carolina law to support the validity and amount of their Claim.

## 4.     Evidence Presented at the Hearing

Notice of the date and time of the hearing on the Objection was properly provided, and the parties had ample notice that the hearing would be an evidentiary one.  Although they bore the burden of proof, the Petersons did not appear at the hearing to testify, nor did they otherwise offer any evidence, including exhibits or third-party testimony, to substantiate any aspect of the Claim. *See In re Hilton*, 2013 WL 6229100, *5 (Bankr. W.D. Va. December 2, 2013) (If the claimant cannot produce sufficient evidence to prove its claim by a preponderance of the evidence, the court should sustain the objection.); *In re McCarthy*, 2004 WL 5683383, at *8 (Bankr. E.D. Va. July 14, 2004) (If the claim does not comply with Fed. R. Bankr. P. 3001(c), "it does not have the benefit of the prima facie validity conferred by Rule 3001(f).  This means that if the creditor presents no evidence in support of its claim, it has necessarily failed to carry its burden of proof, and the claim must be disallowed.").

Although the Petersons listed the Proposed Exhibits in their Statement of Dispute as documents they intended to offer into evidence at the hearing on the Objection,[24] they failed to offer them as evidence at the hearing.

---

[24] In the Petersons' Statement of Dispute, beside each Proposed Exhibit, the Petersons included a parenthetical statement that the document was "previously admitted."  While the Proposed Exhibit "Checks cashed by Randy Devey" was admitted into evidence at the continued confirmation hearing, it was not reintroduced at the hearing on the Objection or referenced in any way.  No request was made of the Court to take judicial notice of any documents in the Court's record, or of any prior testimony or evidence offered in the case.  None of the other Proposed Exhibits are in the record of the Court.

Furthermore, the Petersons made no attempt to introduce the Attachments to the Claim as evidence.  At the hearing, Debtor challenged the Attachments on the ground that they were unauthenticated and hearsay, and therefore were not admissible as evidence.  *See* Fed. R. Evid. 802 and 901(a).  No witness was present to testify regarding the Attachments or support their admission into evidence.  No arguments were advanced by the Petersons that the Attachments or Proposed Exhibits were otherwise admissible evidence, or specifically that any of the documents fell under one of the hearsay exceptions set forth in Fed. R. Evid. 803.  The Petersons did not otherwise effectively rebut Debtor's challenges to the authenticity of the Attachments.

Even though not tendered as evidence by the Petersons, the Court has reviewed the Attachments, and agrees that they are not authenticated, are hearsay, and without more, would not have been admissible at the hearing.  With respect to the Proposed Exhibits, to the extent that the Petersons' notation "previously submitted" could be construed as a request that the Court take judicial notice of the listed items, the Court declines to do so. [25]

Finally, a review of the Attachments indicate that they would be insufficient to satisfy the Petersons' burden of proof at the hearing. While the Attachments may be construed as a summary of damages, they fail to demonstrate the terms of a contract, assertions of breach, any of the nine

---

[25] While this Court may take judicial notice of documents and pleadings in its records, the Court, "may not infer the truth of facts contained in documents, unfettered by rules of evidence or logic, simply because such documents were filed with the court." *In re Scarpinito*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996) (citing Barry Russell, Bankruptcy Evidence Manual § 201.5 (West 1995).  "Admission into evidence of facts contained within a pleading filed with a court must . . . be evaluated using the remaining evidentiary rules, such as hearsay and exceptions thereto." *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).  "The purpose of the hearsay rule is to remove from evidence out-of-court statements offered for their truth that have questionable trustworthiness when the opposing party has no opportunity to contest the hearsay's reliability.  The mere fact that a document is filed with the Court does not bolster its reliability." *Id.* at 415; *see also In re Alpha Protective Svcs., Inc.*, 531 B.R. 889 (Bankr. M.D. Ga. 2015) (While the Court may take judicial notice that a party has filed a proof of claim, "it cannot take judicial notice of the contents of that claim because such facts must be evaluated using ordinary evidentiary rules, such as hearsay and its exceptions."); *In re DePugh*, 409 B.R. 125, 139-140 (Bankr. S.D. Tex. 2009) (Documents attached to proof of claim were insufficient, were hearsay, and no foundation was laid under the business records exception to permit entry of the documents into evidence.).

elements of fraud, or to establish a direct proximate relationship with Debtor. They are not sufficient by themselves to establish claims against Debtor for breach of contract or fraud.

While compilations of voluminous documents are admissible (*see* Fed. R. Evid. 1006), neither "Carrie's Paperwork" or the documents from which it was prepared were offered into evidence. The Petersons offered no testimony to explain "Carrie's Paperwork," its contents, or its connection to the contract or Debtor. This Attachment does not establish the scope of work, consideration, duties and responsibilities of each party (including, for instance, the duty to supply materials, allowances and treatment of overages, contract changes, etc.), consideration, or timing of performance. There is no indication of facts which constitute a breach of performance or unjustified excuse for a failure to perform. It is insufficient to indicate that any of the alleged damages were the direct and proximate result of Debtor's actions or that there were any intentional or false representations by Debtor. The Court was not provided with legal authorities or testimony to support the Petersons' assertion that the amounts contained in "Carrie's Paperwork" are an accurate calculation of their alleged damages, or represent a debt that is owed by Debtor.

Likewise, nothing in the record connects the Patterson Letter to Debtor, the contract or Debtor's alleged fraud. The fact that the Petersons obtained an undated quote from Patterson Construction regarding work on an unidentified property is not sufficient evidence of the contract or link to any alleged breach, fraud, or related damages.

Finally, the Richardson-Bax Affidavit and the Petersons' request for attorney's fees appears procedurally and substantively defective in several respects.[26] It is well established that in South Carolina, attorney's fees are not recoverable unless authorized by contract or statute. *South Carolina Dep't of Social Serv. v. Tharp*, 439 S.E.2d 854 (1994) (As a general rule, attorney's

---

[26] *See supra* at ¶ 8(c).

fees are not recoverable unless authorized by contract or statute.); *Harris-Jenkins v. Nissan Car Mart, Inc.*, 557 S.E.2d 708, 710 (S.C. Ct. App. 2001) ("In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees."); *Prevatte v. Asbury Arms*, 396 S.E.2d 642 (S.C. Ct. App. 1990) (Under South Carolina common law, a prevailing party has no right to attorney's fees, and a party must plead under a contract or statute to receive them.). The Petersons did not point to a statute, and the Court is not aware of one, that gives the Petersons the right to recover attorney's fees and costs in this situation. Additionally, while the Petersons' counsel admitted the Claim is based on a written contract, none was introduced into evidence at the hearing, and therefore, no contractual basis was shown for awarding attorney's fees and costs.[27] For these reasons, the Court finds that the Petersons are not entitled to attorney's fees and costs.

In conclusion, because the Claim did not qualify as *prima facie* evidence of the validity and amount of a debt, and because Debtor's Objection raised substantive grounds challenging the enforceability, validity, and amount of the claim under § 502, the Petersons had the initial and ultimate burden of proof at the hearing to establish their Claim. The burden of proof never shifted to Debtor. The Petersons did not present any evidence to satisfy their burden of establishing the Claim, and therefore, like plaintiffs who fail to meet their burden in a state court trial, their right to recovery fails. *See, e.g., In re Gatzke*, 365 B.R. 138, 185 (Bankr. D. Mont. 2007) (By failing to offer evidence to support a right to payment from the debtor based on a written agreement or otherwise, claimant failed in its ultimate burden of proof and its claim was disallowed.); *In re LJL*

---

[27] The cases relied on by the Petersons to support their request for attorney's fees are inapplicable in an action for a breach of contract or fraud. *Compare Nienow v. Nienow*, 232 S.E.2d 504 (S.C. 1977) (attorney's fees are discretionary with the trial judge in a domestic action) *with Raynor v. Byers*, 810 S.E.2d 430, 432, (S.C. Ct. App. 2017) ("In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees." (internal citation omitted)).

*Truck Center, Inc.*, 299 B.R. 663, 666 (Bankr. M.D. Ga. 2003) (Claimant's failure to prove the essential elements of a contract with the debtor, the elements of an enforceable tort claim, or its entitlement to damages under either legal theory, resulted in disallowance of the claim in its entirety.). Without evidence, the Court finds that the claim must be disallowed.[28]

## C.    <u>Oral Motion to Amend.</u>

During the hearing when the Petersons' failure to present evidence to meet their burden of proof became apparent, the Petersons' counsel made an oral motion for leave to amend the Claim in an attempt to shift the evidentiary burden.[29]  Whether or not to allow a party to amend its claim is within the sound discretion of the Court. *In re Workman*, 373 B.R. 460, 464 (Bankr. D.S.C. 2007); *In re Mitchum*, C/A No. 02-7575-W, slip op. (Bankr. D.S.C. August 25, 2004); *accord In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005) (The bankruptcy court has discretion on the issue of claim amendments.).  While, as a general matter, claim amendments are often allowed to permit a claimant to cure a defect in its originally filed claim,[30] there is no absolute right to amend a proof of claim, (*see In re Ayres-Haley*, C/A No. 07-10314, 2008 WL 163580, at *3 (Bankr. E.D. Va. 2008)), and undue prejudice to the opposing party or to other creditors, undue delay or bad faith are grounds to deny an amendment to a timely filed proof of claim.  *See In re Workman*, 373 B.R. at 466 (Undue prejudice may be demonstrated through evidence that allowance of the amended claim would interfere with the orderly distribution to other creditors.); *In re Mitchum*,

---

[28] The disallowance of the Petersons' Claim is based upon their failure to meet their burden of producing evidence at the hearing on the Objection. The Claim, without evidence to establish it, is speculative and unenforceable. *See Harford Sands*, 372 F.3d at 642 (affirming a bankruptcy court's disallowance of claim when the creditor failed to carry their burden of proof on a claim that was highly speculative).

[29] Presumably, the amendment was requested to merely add a statement regarding why the contract was not attached to the Claim.

[30] *Ronald J. and Dana Cohn Family Ltd. P'ship v. City of Capitals, Inc.*, 829 F.2d 36 at *2, 1987 WL 44680 (4th Cir. August 28, 1987) (unpublished table decision); *In re Int'l Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985); *In re Commonwealth Corp.*, 617 F.2d 415 (5th Cir. 1980).

slip op. at 4 – 5 (same); *see also In re DePugh*, 409 B.R. at 101-103 (considering, among other items, a creditor's undue delay, bad faith, and repeated failures to cure deficiencies, as well as the undue prejudice to other parties in denying a creditor's request to amend its claim); *In re Tran*, 369 B.R. at 321 (It was not an abuse of discretion for the Bankruptcy Court to decline to grant creditor leave to amend its proof of claim to enable it to cure the evidentiary defects discussed by the Court at the hearing on the claim objection.); *In re Mitchell*, 116 B.R. 63, 64 (Bankr. W.D. Va. 1990) ("The court should freely allow an amendment when the purpose is to cure a defect in the claim as it was originally filed.  However, if an amendment will cause undue prejudice to an opposing party, then the court should not allow it.").

Debtor's Objection to the Claim was filed on April 26, 2018.  For more than 40 days prior to the hearing on the Objection, the Petersons knew that Debtor disputed the amount and validity of the Claim, cited the Claim's non-compliance with Fed. R. Bankr. P. 3001, and challenged the authenticity and adequacy of the Attachments, as part of the basis for the Objection.   In light of the Objection, the Petersons knew or should have known of the importance of the presentation of the written contract or its terms, and evidence to establish their Claim.  Nevertheless, no request or effort to amend the Claim to correct the defects was made prior to the hearing, and no request for discovery or for production of the contract was made.[31]  Of course, the Petersons could have appeared at the hearing to testify or present evidence to establish the validity and amount of the Claim, but they did not.  In fact, the Petersons' counsel withdrew the request for a continuance at the beginning of the hearing, and did not renew the request thereafter.  Instead, only after the failure of proof at the hearing did counsel ask to amend the Claim.

---

[31] *See* Fed. R. Bankr. P. 9014(c) (Discovery is available in contested matters.).

The Court denied the request at the hearing, finding the request to amend was late, and if allowed, would cause prejudice to Debtor and creditors as well as cause undue delay in the administration of the case. Debtor's reliance on the Petersons' failure to previously amend the Claim was justified in determining which party had the initial burden of proof at the hearing and in his preparation for the contested hearing. Similarly, the Petersons presented no sufficient justification for the failure to amend the Claim earlier, certainly none that would justify shifting the burden and restarting the contested hearing on the Objection and resulting delay to the case.[32] As indicated by the Trustee, allowance or disallowance of the Claim would have a significant impact on the administration of this case, both in terms of the distribution to other unsecured creditors (who will be paid in full if the Claim is disallowed), and on the length of time and the number of payments Debtor will be required to make under the Plan before receiving his discharge. It would be inequitable and prejudicial to Debtor to give the Petersons leave to amend the Claim in the midst of an evidentiary hearing at which the Petersons bore, but failed to meet, their burden of proof.  To grant them such relief would enable the Petersons' to circumvent the consequences of their evidentiary failures, and would unfairly and without notice impose a significant procedural and financial burden on Debtor. In filing and prosecuting the Objection at the hearing on the original Claim, Debtor incurred attorney's fees and costs. If the matter was restarted and a further hearing necessary, Debtor, who has relocated to California, would incur additional costs of travel, loss work and income, and attorney's fees and costs.

To grant the motion at that point would also unfairly excuse the Petersons' ignorance of the requirements of the Bankruptcy Rules and the contents of the Objection of which they had

---

[32] Several times during the course of the case, Petersons' counsel stated that they were not familiar with bankruptcy law and procedure. However, the Court cannot allow such an excuse to relieve the party of their burden of proof to the prejudice of other parties.

ample notice and substantially affect the timing and distribution to creditors including increasing costs to all parties. For these reasons, the Petersons' oral motion to amend the Claim was denied. *See In re DePugh*, 409 B.R. at 101-103 (Denying creditor's motion for leave to amend proof of claim to add missing documentation not attached to original claim, when the request to amend was made both beyond the claims bar date and a month after notice of the debtor's claim objection.).

## CONCLUSION

For the foregoing reasons, the Court finds that it has jurisdiction and final authority, and that the Petersons are not entitled to a jury trial in this matter. In addition, the Petersons' request for relief from the automatic stay is denied.

The Petersons' Claim was not filed in accordance with Fed. R. Bank. P. 3001, and therefore did not qualify as *prima facie* evidence of validity and amount of the debt. The Petersons failed to meet their burden of proving the validity and amount and thus the enforceability of the Claim. To permit the Petersons to amend the Claim at or after the hearing on the Objection would cause undue delay and be unfairly prejudicial to Debtor and creditors of the estate; therefore, the Court denied the Petersons' motion to amend the Claim at the hearing on the Objection.

For all of these reasons, Debtor's Objection is sustained, and the Petersons' Claim is disallowed.

**AND IT IS SO ORDERED.**